IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT C. VILLARE, MD,<br><br>    Plaintiff,<br><br>V.<br><br>LEHIGH VALLEY HEALTH NETWORK, INC. and JOHN HART,<br><br>    Defendants. | CIVIL ACTION<br><br>No. 5:19-cv-02227 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
<u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>**

A. James Johnston
ajohnston@postschell.com
Andrea M. Kirshenbaum
akirshenbaum@postschell.com
David E. Renner
drenner@postschell.com
Four Penn Center
1600 John F. Kennedy Blvd.
Philadelphia, PA 19103
Phone:  (215) 587-1000
Facsimile:  (215) 587-1444

Glenn Guanowsky
**Vice President, Legal Services**
**Lehigh Valley Health Network**
glenn.guanowsky@LVHN.org
**234 North 17th Street**
**Allentown, PA 18104**
**Phone:  (610) 969-2774**

*Counsel to Defendants*

**I.     INTRODUCTION**

After his first lawsuit against Defendants Lehigh Valley Health Network ("LVHN") and John Hart in the Lehigh County Court of Common Pleas – Case No. 2016-C-1907 (the "State Court Action"), was unsuccessful, Plaintiff Robert C. Villare, MD now comes to this Court hoping for a "do-over."  Specifically, Plaintiff, a former applicant to the medical staff at LVHN is attempting to assert the following claims against Defendants:  "Business Disparagement" (Count I), Defamation (Count II), Tortious Interference with Prospective Business Relations (Count III), and Intentional Infliction of Emotional Distress (Count IV).  However, Plaintiff's claims are time-barred because he failed to institute this action within the one and two year limitations period applicable to Plaintiff's claims.  Moreover, and to the extent they are not timed-barred (which they are), Plaintiff's claims for "Business Disparagement" (Count I), Defamation (Count II), and Tortious Interference with Prospective Business Relations (Count III) are barred by the doctrines of collateral estoppel and *res judicata* because they previously were dismissed during the State Court Action.  Plaintiff also attempts to assert a stand-alone claim for "Injunctive Relief" (Count V), which is not permissible.  Additionally, Plaintiff's Complaint should be dismissed because Plaintiff has failed to properly serve Defendants.  For all of these reasons as well as those set forth more fully below, Plaintiff's Complaint fails to state a claim upon which relief can be granted and should be dismissed, with prejudice.

Moreover, Plaintiff's conduct in filing a frivolous Complaint, which merely seeks to (improperly) resurrect time-barred claims and claims that are barred by the doctrines of collateral estoppel and *res judicata*, is vexatious, oppressive, and made in bad faith.  Consequently, Defendants also seek an award of attorneys' fees and costs incurred in connection with the preparation of the instant Motion.  *See Chambers v. Nasco, Inc.*, 501 U.S. 32, 45-46 (1991) (recognizing the inherent power of a federal court to "assess attorney's fees when a party 'has

acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'") (quoting *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258–59 (1975)).

## II. HISTORY OF THE CASE AND STATEMENT OF PERTINENT FACTS (AS OPPOSED TO LEGAL CONCLUSIONS)

### A. Procedural History.

On August 1, 2016, Plaintiff instituted the State Court Action by filing a four-count complaint, which asserted the following claims against Defendants:[1] (1) Breach of Contract (Count I); Tortious Interference with Contract (Count II); Intentional Infliction of Mental Distress ("IIED") (Count III); and Defamation (Count IV). Attached hereto as Exhibit A is a true and correct copy of the docket from the State Court Action obtained on July 8, 2019.[2] Defendants filed Preliminary Objections challenging all counts of the complaint in the State Court Action, and Plaintiff responded by filing an amended complaint, which retained the same counts as the original complaint but added certain allegations. Ex. A. Defendants filed preliminary objections to the amended complaint, and Plaintiff then responded by filing a Second Amended Complaint ("SAC") (attached hereto as Exhibit B),[3] which again retained the same counts as the original complaint but included certain revised language and additional allegations. *See* Ex. A.

In the State Court Action, Plaintiff alleged, as he does here, that Defendants defamed him by making allegedly defamatory statements to the National Practitioner Data Bank (the "NPDB")

---

[1] Plaintiff's State Court Action also included claims against additional defendants Lehigh Valley Physician Group and Julene Campion, who are not defendants to the instant lawsuit.

[2] This Court "may take judicial notice of a filing in a prior case in ruling on a motion to dismiss, but it can only do so to establish the existence of that filing, not for the truth of the facts asserted therein." *Burton v. Nationstar Mortg. LLC*, 255 F. Supp. 3d 616, 619 (E.D. Pa. 2015) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 222 (3d Cir. 2004), *abrogated in part on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)); *see also M & M Stone Co. v. Pennsylvania*, 388 F. App'x 156, 162 (3d Cir. 2010) (holding "that a prior judicial opinion constitutes a public record of which a court may take judicial notice").

[3] *See* note 2, *supra.*

that allegedly disparaged Plaintiff's abilities and value as a physician causing Plaintiff economic harm by preventing his employment at LVHN and other hospitals and jeopardizing staff privileges and appointments elsewhere.  *See* Ex. B ¶¶ 56-59; Compl. ¶¶ 68-75 (ECF No. 1).  Moreover, in his State Court Action, as he also alleges here, Plaintiff alleged that Mr. Hart tortiously interfered with Plaintiff's prospective contractual relationship with LVHN.  Ex. B ¶¶ 47-49; Compl. ¶¶ 76-80.

On November 14, 2016, Defendants filed Preliminary Objections to the SAC in the State Court Action, to which Plaintiff failed to respond.  *See* Ex. A.  As such, on December 30, 2016, the Court sustained Defendants' Preliminary Objections to the SAC, and dismissed Plaintiff's SAC in its entirety.  However, on January 19, 2017 Plaintiff filed a Motion for Reconsideration as to the Court's December 30, 2016 Order dismissing the SAC.  *Id.*  Plaintiff also filed his Response in Opposition to Defendants' Preliminary Objections on January 19, 2017.  *Id.*  Defendants responded to Plaintiff's Motion for Reconsideration, and the Court granted Plaintiff's Motion for Reconsideration.  *Id.*

The Lehigh County Court of Common Pleas heard argument on Defendants' Preliminary Objections to the SAC on February 28, 2017, and on June 30, 2017, by Memorandum Opinion and Order, the Court overruled in part and sustained in part Defendants' Preliminary Objections.  *See* Exs. B-C.[4]  In its Order, the Court dismissed Plaintiff's claims for Breach of Contract (Count I), Tortious Interference with Contract (Count II), and Defamation (Count IV).  *See* Ex. C.  The Court declined to dismiss Plaintiff's IIED claim, asserted against all Defendants (Count III).  *Id.*  Plaintiff did not appeal the June 30, 2017 Memorandum Opinion and Order dismissing his claims for Breach of Contract, Tortious Interference with Contract, and Defamation.  *See* Ex. A.

---

[4] *See* note 2, *supra.*

3

The parties then proceeded to engage in discovery, during which Plaintiff and his counsel were extremely dilatory in providing responses to Defendants' discovery requests, requiring numerous motions to compel and motions for sanctions to be filed. *See id.* Ultimately, on June 10, 2018, Plaintiff submitted a Praecipe to Discontinue the State Court Action against all Defendants, which discontinued the State Court Action effective that day. Ex. D.[5]

On May 21, 2019, Plaintiff initiated the instant lawsuit by filing the Complaint. *See* Compl. In his Complaint, despite the dismissal of his Defamation and Tortious Interference with Contract claims in the State Court Action, Plaintiff again alleges claims for "Business Disparagement" (*i.e.*, defamation) (Count I), Defamation (Count II), and Tortious Interference with Prospective Business Relations (Count III). *See id.* Plaintiff's Complaint also asserts claims for IIED (Count IV) and Injunctive Relief (Count V). *See id.*

B.   **Factual Allegations in the Complaint.**[6]

LVHN is a hospital and health care provider. Compl. ¶ 3. John Hart was employed by LVHN as Senior Vice President of Medical Services. *Id.* Plaintiff is a physician, specializing in general and vascular surgery and wound care/hyperbaric oxygen medicine. *Id.* ¶ 2. In the summer of 2014, Plaintiff applied for a position at LVHN's Wound Care & Hyperbaric Medicine Center, and had communications with various individuals regarding this opportunity as well as the credentialing process. *Id.* ¶¶ 7-9.

In December 2014 and January 2015, several physicians recommended that Plaintiff be appointed to the medical staff and he was sent a membership agreement (the "Membership

---

[5] *See* note 2, *supra.*

[6] The following facts are taken as true for the purpose of the instant motion only. *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005). Plaintiff's Complaint also contains "bald assertions," shorn of any factual basis, which should not be taken as true or credited by this Court. *Anspach v. City of Phila.*, 503 F.3d 256, 260-61 (3d Cir. 2007). Defendants only recite the facts related to the issues raise in this Motion (*i.e.*, the statute of limitations and the doctrines of collateral estoppel and *res judicata*).

4

Agreement"), which he signed and returned. *Id.* ¶¶ 10-11.  Pursuant to the Membership Agreement, Plaintiff's start date was contingent on having been "successfully credentialed with the Lehigh Valley Hospital Medical Staff." *Id.* ¶ 11.  Similarly, the Membership Agreement was expressly "contingent on '[Plaintiff] obtaining appointment to the LVHN Medical Staff with appropriate clinical privileges.'" *Id.*  Upon signing the Membership Agreement, Plaintiff informed his then-current employers that he would be leaving in order to accept a position at LVHN. *Id.* ¶ 12.

Plaintiff was required to submit an application for medical staff appointment to LVHN's Medical Executive Committee ("MEC"). *Id.* ¶¶ 12-13.  Following the submission of Plaintiff's application for medical staff appointment, Mr. Hart undertook a private internet search of Plaintiff and discovered that Plaintiff had been a plaintiff in numerous civil lawsuits against other hospitals, whereupon Mr. Hart relayed this information to the medical staff and convinced several doctors to rescind their recommendations regarding Plaintiff's appointment. *Id.* ¶¶ 14-16, 26-28.

On February 23, 2015, Mr. Hart telephoned Plaintiff "giving [Plaintiff] an opportunity to withdraw his application and contract (already signed), or if [Plaintiff] proceeded, threatening that 'I [(Mr. Hart)] assure you [(Plaintiff)] that with me on that [MEC] you will be denied and there's no way they will approve your application.  And when they deny you, I'll report you to the [NPDB].  And you know what that will do to you.'" *Id.* ¶ 16.  On March 3, 2015, the MEC met to discuss Plaintiff's application for appointment, during which time Mr. Hart presented the information he discovered to the MEC. *Id.* ¶¶ 26-27.  On March 3, 2015, the MEC rejected Plaintiff's application for medical staff appointment. *Id.* ¶¶ 26-28.  On or about March 5, 2015, Plaintiff was notified by letter that the MEC had denied his application. *Id.*

5

Plaintiff appealed the denial of his application by requesting an internal administrative hearing in accordance with the Medical Staff Bylaws. *Id.* ¶ 29. Beginning in June 2015, hearings were held before members of a Hearing Committee. *Id.* ¶¶ 30-31. "On September 30, 2015, the Hearing Committee wrote that '[Plaintiff] made false statements on his [a]pplication and it supported the MEC's decision to recommend that LVHN and its Board of Trustees deny [Plaintiff's] application for appointment to the [m]edical staff with clinical privileges.'" *Id.* ¶ 37.

By letter dated October 8, 2015, Plaintiff was advised that "he was 'eligible to request an appellate review under the Medical Staff Bylaws.'" *Id.* ¶ 39. Although the Complaint does not specify, it can be inferred that Plaintiff requested appellate review and that the MEC accepted Plaintiff's appeal because "[o]n October 16, 2015, the MEC met to discuss the hearing committee's report and unanimously decided to affirm its original recommendation to deny Dr. [Plaintiff's] application to the medical staff." *Id.*

"On December 10, 2015, at [Plaintiff's] request but without his knowledge, the Appeals Committee[7] met. It unanimously supported the recommendation to deny [Plaintiff's] medical staff appointment. By letter to LVHN dated November 20, 2015, [Plaintiff] had requested an opportunity to attend the Appeals Committee meeting to state his case. Absent LVHN granting [Plaintiff] permission to attend, [Plaintiff] clearly stated that he withdrew his request for Appeal to the Board of Trustees. After the Appeals Committee meeting occurred outside his presence, [Plaintiff] withdrew his request, as it was no longer timely." *Id.* ¶ 40. LVHN's "Board of Trustees met on January 6, 2016 despite [Plaintiff's] withdrawal of a Board Appeals Meeting and approved the Appeals Committee Recommendation to deny [Plaintiff's] medical staff

---

[7] It is worth noting that Plaintiff's Complaint contains, what appear to be, numerous defined terms, but for which Plaintiff has offered no such definition. For the purposes of this Motion, when quoting Plaintiff's Complaint Defendants recite Plaintiff's allegations as they are written in Complaint.

6

appointment. But LVHN asserted the position, without any support, that [Plaintiff] and the hospital had no contract for staff membership or employment and therefore each party had no obligations to the other." *Id.* ¶ 41.

On January 6, 2016, LVHN reported the "denial of clinical privileges" to Plaintiff to the NPDB. *Id.* ¶ 42. LVHN also advised the NPDB that the reason it denied Plaintiff's clinical privileges was due to Plaintiff's "'failure to disclose' and 'disruptive conduct.'" *Id.* LVHN further reported to the NPDB that it "'identified possible concerns with [Plaintiff's] interactions with hospital representatives and the accuracy and completeness of [Plaintiff's] application.'" *Id.* "In January 2017, [Plaintiff] asked LVHN to ask the NPDB to void its report. LVHN refused, so the NPDB retains it." *Id.* ¶ 46. This alleged refusal in January 2017 is the last action in the Complaint that Defendants allegedly took with regard to Plaintiff. *See generally* Compl.

### III. ARGUMENT

#### A. Legal Standards.

##### 1. Standard For Dismissal Under Fed. R. Civ. P. 12(b)(5).

Federal Rule of Civil Procedure 12(b)(5) empowers a court to dismiss a case for "insufficiency of service of process." Courts also are granted "broad discretion to dismiss the action or to retain the case but quash the service that has been made on defendant[s]." *Grand Entm't Grp. v. Star Media Sales*, No. 86-5763, 1993 U.S. Dist. LEXIS 15413, at *4 (E.D. Pa. Oct. 21, 1993) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure, § 1354 at 288 (2d ed. 1990)). However, in *Umbenhauer v. Woog*, 969 F.2d 25, 30 (3d Cir. 1992), the United States Court of Appeals for the Third Circuit determined that "dismissal of a complaint is inappropriate when there exists a reasonable prospect that service may yet be obtained. In such instances, the district court should at most, quash service, leaving the plaintiff free to effect proper service." (citations omitted). In this instance, and for the reasons discussed

7

below, the circumstances of this matter justify the outright dismissal of Plaintiff's Complaint for insufficient service of process pursuant to Rule 12(b)(5). If service is merely quashed, any later attempts by Plaintiff to effectuate service of process upon Defendants would be moot, because for the reasons set forth below, Plaintiff's claims are time barred and otherwise improper.

### 2. Standard For Dismissal Under Fed. R. Civ. P. 12(b)(6).

A claim may be dismissed under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." To state a viable claim and survive a motion to dismiss, Plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," or accept as true unsupported conclusions and unwarranted inferences. *Twombly*, 550 U.S. at 555 (citation omitted). Accordingly, courts in the Third Circuit engage in a three-step analysis at the motion to dismiss stage:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal*, 129 S. Ct. at 1947. Second, the court should identify allegations that, "because they are not more than conclusions, are not entitled to the assumption of truth." *Id.* at 1950. Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.*

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (alterations in original; footnote omitted); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Without "sufficient factual matter to show that the claim is facially plausible," a complaint must be dismissed. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (noting that *Twombly*'s "plausibility paradigm . . . applies with equal force to analyzing the adequacy of

8

claims of employment discrimination."); 2-12 James Wm. Moore et al., Moore's Federal Practice – Civil § 12.34 ("conclusory allegations . . . are not entitled to the assumption of truth. . . . While facts must be accepted as alleged, this does not automatically extend to bald assertions, subjective characterizations, or legal conclusions.  The plaintiff . . . must allege a factual predicate concrete enough to warrant further proceedings." (citations omitted)).

While Plaintiff is "not required to establish the elements of a *prima facie* case" in order to prevent dismissal of her claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, such elements serve as a touchstone for courts to assess whether a party has plausibly pled claims for relief.  *Fowler*, 578 F. 3d at 213; *Hassan v. The City of New York*, 804 F.3d 277, 296 n.6 (3d Cir. 2015); *see also Connelly*, 809 F.3d at 789; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (stating that plaintiff must "raise a reasonable expectation that discovery will reveal evidence of the necessary element").

**B.     Plaintiff Has Not Properly Served Defendants.**

On a motion to dismiss for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5), "the party asserting the validity of service bears the burden of proof on that issue."  *Mitchell v. Theriault*, 516 F. Supp. 2d 450, 452 (M.D. Pa. 2007) (quoting *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 488 (3d Cir. 1993)).  Federal Rule of Civil Procedure 4(e) provides that service of a summons and complaint on an individual within the United States may be made by any of the following methods:

> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>
> (2) doing any of the following:
>
>> (A) delivering a copy of the summons and of the complaint to the individual personally;

>(B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
>(C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Rule 4(h) provides that service of a summons and complaint on a corporation within the United States may be made by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed. R. Civ. P. 4(h)(1)(B). Alternatively, a plaintiff may serve a corporation within the United States by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A).

Given that both Defendants are located within the Commonwealth of Pennsylvania, pursuant to Pennsylvania Rules of Civil Procedure 400 and 402, original process may only be served by the sheriff by one of the following methods:

>(1) by handing a copy to the defendant; or
>
>(2) by handing a copy
>
>>(i) at the residence of the defendant to an adult member of the family with whom he resides; but if no adult member of the family is found, then to an adult person in charge of such residence; or
>>
>>(ii) at the residence of the defendant to the clerk or manager of the hotel, inn, apartment house, boarding house or other place of lodging at which he resides; or
>>
>>(iii) at any office or usual place of business of the defendant to his agent or to the person for the time being in charge thereof.

Here, Plaintiff claims to have "served" Defendants by sending copies of the Complaint and Summons to Defendants via certified mail. However, Plaintiff cannot meet his burden of demonstrating proper service of process against Defendants because none of the methods of

service of original process authorized by the Federal or Pennsylvania Rules of Civil Procedure permit service of original process by certified mail.  Accordingly, Plaintiff's Complaint should be dismissed for insufficient service of process.  *See* Fed. R. Civ. P. 4(e), 4(h), 12(b)(5); Pa. R. Civ. P. 400, 402; *see also Sullivan v. Doe*, No. 07-2092, 2007 U.S. Dist. LEXIS 93758, at *7 (E.D. Pa. Dec. 20, 2007) (dismissing plaintiff's complaint, in part, because plaintiff failed to effectuate proper service when plaintiff only attempted to mail copies of the complaint and summons to defendant, which was not a proper method of service under the rules).[8]

### C. Plaintiff's Claims Are Time-Barred.

A claim may be dismissed for failure to state a claim on statute of limitations grounds "where the complaint facially shows noncompliance with the limitations period." *Clarkson v. SEPTA*, No. 14-2510, 2014 U.S. Dist. LEXIS 153945 at *4 (E.D. Pa. Oct. 30, 2014) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994)).

Plaintiff's Complaint asserts claims for "Business Disparagement" (Count I),[9] Defamation (Count II), Tortious Interference with Prospective Business Relations (Count III), Intentional Infliction of Emotional Distress (Count IV), and Injunctive Relief (Count V).  In Pennsylvania, claims for defamation and business or commercial disparagement (*i.e.*, defamation) are subject to a one year statute of limitations.  42 Pa.C.S. § 5523(1); *Pro Golf Mfg.*, 809 A.2d at 456-46.  Claims for tortious interference with prospective business relations and intentional infliction of emotional distress are subject to a two year statute of limitations.[10]  42

---

[8] While Pennsylvania Rules of Civil Procedure 403 and 404 do permit service of process on a defendant located **_outside_** of the Commonwealth by certified mail, it is undisputed that both Defendants here are located within Pennsylvania.  As such, service of process by certified mail is not authorized.

[9] While Plaintiff captions this Count as "Business Disparagement," this claim is actually a claim for defamation.  *See, e.g.*, *Pro Golf Mfg. v. Tribune Review Newspaper Co.*, 809 A.2d 243, 456-46 (Pa. 2002).

[10] To the extent Plaintiff's tortious interference claim is based on alleged defamatory statements made by Defendants, "the one-year statute of limitations for defamation applies to [Plaintiff's] tortious interference claim."

11

Pa.C.S. § 5524(2); *Hartman v. Sterling, Inc.*, No. 01-2630, 2003 U.S. Dist. LEXIS 18140, at *47 (E.D. Pa. Sep. 10, 2003); *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 711 (E.D. Pa. 2007); *Maverick Steel*, 54 A.3d at 355.

Here, the latest dates on which Plaintiff alleges that either Defendant took any action that allegedly contributed to any of his claims is: (1) January 6, 2016 when Defendants reported Plaintiff to the NPDB and LVHN's Board of Trustees approved the Appeals Committee's recommendation to deny Plaintiff medical staff appointment at LVHN and (2) some unknown date in January 2017 when LVHN allegedly "refused" "to ask the NPDB to void its report." *See* Compl. ¶¶ 41-42, 46, 68-85. However, Plaintiff did not file the instant lawsuit until May 21, 2019 – over two years later. As such, his claims clearly are time-barred by the one and two year statutes of limitations in 42 Pa.C.S. §§ 5523(1) and 5524(2). Accordingly, Plaintiff's claims must be dismissed, with prejudice.[11]

### D. Plaintiff's Business Disparagement, Defamation, And Tortious Interference With Prospective Business Relations Claims Are Barred By The Doctrines Of Collateral Estoppel And *Res Judicata*.

Even if this Court finds that Plaintiff's claims for "Business Disparagement" (Count I), Defamation (Count II), and Tortious Interference with Prospective Business Relations (Count

---

*Maverick Steel Co., L.L.C. v. Dick Corp.*, 54 A.3d 352, 355 (Pa. Super. Ct. 2012); *Evans v. Phila. Newspapers, Inc.*, 601 A.2d 330, 333-34 (Pa. Super. Ct. 1991). Here, because Plaintiff's tortious interference claim is clearly barred by the two year statute of limitations, it would obviously also be barred by the one year limitation period as well.

[11] To the extent Plaintiff attempts to rely on 42 Pa.C.S. § 5535 or Pa. R. Civ. P. 231 as somehow tolling the statute of limitations applicable to his claims during the pendency of his discontinued State Court Action (where he raised identical claims against Defendants), his reliance is misplaced. The Pennsylvania Superior Court has held that when a plaintiff takes a voluntary nonsuit or voluntarily discontinues an action (as Plaintiff did in the State Court Action [*see* Ex. D]) it is as if the original suit never happened and, as such, the statute of limitations period is not tolled during the pendency of the original action. *See, e.g.*, *Williams Studio Div. of Photography by Tallas, Inc. v. Nationwide Mut. Fire Ins. Co.*, 550 A.2d 1333, 1335 (Pa. Super. Ct. 1988); *Sokol v. Clark*, No. 16-1477, 2017 U.S. Dist. LEXIS 193035, at *16 (W.D. Pa. Nov. 22, 2017) (same); *Atl. Pier Assocs., LLC v. Boardakan Rest. Partners, L.P.*, No. 08-4564, 2011 U.S. Dist. LEXIS 83414, at *25-27 n.14 (E.D. Pa. July 27, 2011) (same). As such, in order for the instant lawsuit to be viable (which it is not) it would have had to have been brought within the applicable one and two statute of limitations period (which Plaintiff failed to do).

III) are timely (which they are not), these claims also are barred by the doctrines of collateral estoppel and *re judicata*.

As noted above, in his State Court Action, Plaintiff brought claims for, *inter alia*, Defamation and Tortious Interference with Prospective Business Relations on nearly the exact same facts he is alleging here. *Compare* Ex. B, *with* Compl. Specifically, in the State Court Action, Plaintiff alleged that Defendants defamed Plaintiff by making allegedly defamatory statements to the NPDB. *See* Ex. B ¶¶ 56-59. According to Plaintiff, these statements allegedly disparaged Plaintiff's abilities and value as a physician and employee and caused Plaintiff economic harm by preventing his employment at other hospitals and jeopardizing staff privileges and appointments elsewhere. *Id.* ¶¶ 56-59. Moreover, in his State Court Action, Plaintiff alleged that Mr. Hart tortiously interfered with Plaintiff's prospective contractual relationship with LVHN. *Id*. ¶¶ 47-49.

By Memorandum Opinion and Order dated June 30, 2017, the Lehigh County Court of Common Pleas dismissed Plaintiff's claims for Defamation[12] and Tortious Interference with Prospective Business Relations.[13] *See* Ex. C. Plaintiff chose not to appeal this dismissal of his Defamation and Tortious Interference with Prospective Business Relations claims, and as such, the Court's June 30, 2017 Order became a final judgment on the merits. *See, e.g.*, *Gen. Acc. Fire & Life Assur. Corp., Ltd. v. Flamini*, 445 A.2d 770, 772 (Pa. Super. Ct. 1982) (citing *Bearoff v. Bearoff Bros., Inc.*, 327 A.2d 72 (Pa. 1974)); *Am. Music Theater Festival, Inc. v. TD Bank, NA.*, No. 10-638, 2012 U.S. Dist. LEXIS 2663, at *17-20 (E.D. Pa. Jan. 10, 2012).

---

[12] *See* note 9, *supra.*

[13] While Plaintiff titled his Tortious Interference with Prospective Business Relations claim as a claim for Tortious Interference with Contract, the facts and legal theories Plaintiff alleged in both the State Court Action and the instant action are identical. *Compare* Ex. B ¶¶ 47-49, *with* Compl. ¶¶ 76-80.

13

The doctrine of issue preclusion, also known as collateral estoppel, precludes the relitigation of the same issues between the same parties in a different cause of action.  *See Iseley v. Talaber*, 232 F. App'x 120 (3d Cir. 2007); *Schroeder v. Acceleration Life Ins. Co.*, 972 F.2d 41, 45 (3d Cir. 1992).  "The policy behind the doctrine is that 'a losing litigant deserves no rematch after a defeat fairly suffered, in adversarial proceedings, on an issue identical in substance to the one he subsequently seeks to raise.'"  *Iseley*, 232 F. App'x at 123 (quoting *Swineford v. Snyder County Pennsylvania*, 15 F.3d 1258, 1266 (3d Cir. 1994)).  Under Pennsylvania law, four factors must be present for collateral estoppel to apply:  "(1) the issue decided in the prior adjudication must be identical with the one presented in the later action; (2) there must have been a final judgment on the merits; (3) the party against whom collateral estoppel is asserted must have been a party or in privity with the party to the prior adjudication; and (4) the party against whom collateral estoppel is asserted must have had a full and fair opportunity to litigate the issue in question in the prior adjudication."  *Witkowski v. Welch*, 173 F.3d 192, 199 (3d Cir. 1999).

*Res Judicata*, or claim preclusion, is a "defense asserted when a case is essentially identical to one that has previously been adjudicated."  *R & J Holding Co. v. Redevelopment Auth. of County of Montgomery*, 670 F.3d 420, 427 (3d Cir. 2011), *cert. denied*, 132 S. Ct. 2792, (2012).  *Res judicata* applies "not only to claims actually litigated, but also to claims which could have been litigated during the first proceeding if they were part of the same cause of action."  *Id.* at 427 (quoting *Balent v. City of Wilkes—Barre*, 669 A.2d 309, 313 (Pa. 1995)).  Claim preclusion "bars a subsequent suit where there has been:  '(1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies.'"  *Devon Drive Lionville, LP v. Parke Bancorp, Inc.*, No. 15-3435, 2017 U.S. Dist. LEXIS 194158, at *31-32

(E.D. Pa. Nov. 27, 2017) (quoting *E.E.O.C. v. U.S. Steel Corp.*, 921 F.2d 489, 493 (3d Cir. 1990)).

Here, both issue preclusion and claim preclusion bar Plaintiff's claims for "Business Disparagement" (Count I), Defamation (Count II), and Tortious Interference with Prospective Business Relations (Count III). As to issue preclusion, all four of the necessary elements are present. First, as noted above, the issues the State Court Action dismissed by way of its June 30, 2017 Memorandum Opinion and Order (*i.e.*, Plaintiff's claims for defamation based on Defendants allegedly defamatory statements to the NPDB that allegedly harmed Plaintiff's ability to obtain employment and his reputation and professional character and his claim that Mr. Hart allegedly tortiously interfered with Plaintiff's prospective contractual relationship with LVHN) are identical to the issues presented in this federal court action. *See* Exs. B-C. Second, this dismissal was a final adjudication on the merits because Plaintiff failed to appeal the decision in the State Court Action. *See, e.g.*, *Gen. Acc. Fire & Life Assur. Corp.*, 445 A.2d at 772. Third, Plaintiff and Defendants were all parties in the State Court Action. And fourth, Plaintiff had a full and fair opportunity to litigate these issues in the State Court Action by opposing Defendant's Preliminary Objections. *See* Ex. A. Therefore, the doctrine of issue preclusion (collateral estoppel) bars Plaintiff's claims for "Business Disparagement" (Count I), Defamation (Count II), and Tortious Interference with Prospective Business Relations (Count III).

As to claim preclusion, all three elements also are present here. First, as noted above, there was a final judgment on the merits of Plaintiff's claims for "Business Disparagement" (Count I), Defamation (Count II), and Tortious Interference with Prospective Business Relations (Count III). Second, while Plaintiff has slightly changed the names of some of his claims,

15

Counts I-III of the instant lawsuit are the same claims for defamation and tortious interference with contractual relations as alleged in the State Court Action.  Third, Plaintiff and Defendants all were parties in the State Court Action.  As such, the doctrine of claim preclusion (*res judicata*) also bars Plaintiff's claims for "Business Disparagement" (Count I), Defamation (Count II), and Tortious Interference with Prospective Business Relations (Count III).

Accordingly, even if they were not time-barred (which they clearly are) Plaintiff's claims for "Business Disparagement" (Count I), Defamation (Count II), and Tortious Interference with Prospective Business Relations (Count III) must be dismissed, with prejudice, based on the doctrines of collateral estoppel and *res judicata*.

### E. Plaintiff's Claim For Injunctive Relief (Count V) Fails as a Matter of Law.

In Count V of his Complaint, Plaintiff asserts a separate cause of action for "Injunctive Relief."  *See* Compl. pp. 20-22.  However, "[i]njunctive relief is a remedy and cannot be grounds for a separate claim." *Wagner v. Samsung Elecs. Am., Inc.*, No. 16-3623, 2016 U.S. Dist. LEXIS 171910, at *10-11 (E.D. Pa. Dec. 13, 2016).  While Plaintiff ***may*** be permitted to assert injunctive relief as a ***remedy*** for an otherwise viable cause of action, plaintiff is not permitted to assert such a remedy as a stand-alone claim.  *Id.*  "The relief a plaintiff seeks, and the claims he asserts, are . . . conceptually distinct components of a complaint, and there is no need for a plaintiff to devote a separate count of a complaint to a request for a certain type of relief." *Kauffman v. Pa. Soc'y for Prevention of Cruelty to Animals*, 766 F. Supp. 2d 555, 560 (E.D. Pa. 2011).  When a plaintiff includes both a separate count requesting the specific relief and again requests it in the concluding prayer for relief, the count should be dismissed.  *Id.*  Moreover, where all other claims alleged in a complaint are not viable (as with all of Plaintiff's claims in the Complaint here), the plaintiff will be unable to establish a clear right to relief, thereby making Plaintiff's request for injunctive relief frivolous.  *See Goleman v. York Int'l Corp.*, No.

16

11-1328, 2011 U.S. Dist. LEXIS 85477, at *27-29 (E.D. Pa. Aug. 3, 2011).  Accordingly, Defendants respectfully request that the Court dismiss Plaintiff's stand-alone count for injunctive relief in Count V of the Complaint, with prejudice.

### F.	Defendants Are Entitled To An Award Of Fees And Costs.

Plaintiff's Complaint in this action never should have been filed.  Plaintiff's claims clearly are time-barred by the applicable statute of limitations and Counts I-III of his Complaint previously were dismissed in the State Court Action and are, as such, barred by the doctrines of collateral estoppel and *res judicata*.  Moreover, Plaintiff has taken no steps to properly serve Defendants in accordance with the applicable rules.  And finally, Plaintiff's Complaint contains a stand-alone claim for "Injunctive Relief," which is not a proper cause of action.

Given that the allegations in this Complaint are nearly identical to the State Court Action (an action that the parties painstakingly litigated for almost two years) and the newly filed Complaint in this case and the State Court Action are based on the same predicate facts, Defendants should never have been required to file the instant Motion to Dismiss, and this Court should never have been required to expend judicial resources in rendering a disposition.  Plaintiff's Complaint is a classic example of vexatious conduct, taken in bad faith and for oppressive reasons.  *See, e.g.*, *Carlino v. Gloucester City High School*, 44 F. App'x 599, 601, (3d Cir. 2002) (affirming district court award of sanctions for filing "patently frivolous" claims, some of which were statutorily barred, including a claim for emotional distress damages unavailable under applicable law).

An award of sanctions serves "the dual purpose of vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy." *Chambers*, 501 U.S. at 45-46 (internal quotations and citation omitted).  Plaintiff has flouted this Court's judicial authority by

filing a time-barred Complaint nearly identical to the complaint he filed in the State Court Action, with claims that also are clearly barred by the applicable statutes of limitations, collateral estoppel and *res judicata*. Defendants clearly have been prejudiced as a result of Plaintiff's vexatious conduct. Consequently, Defendants respectfully request an award of fees and costs incurred in connection with the preparation of the instant Motion to Dismiss.

## IV.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court dismiss Plaintiff's Complaint in its entirety, with prejudice. Defendants also respectfully request an award of fees and costs incurred in connection with the preparation of the instant Motion.

Respectfully submitted,

**POST & SCHELL, P.C.**

Dated: July 9, 2019   By:   */s/ David E. Renner*
A. James Johnston
ajohnston@postschell.com
Andrea M. Kirshenbaum
akirshenbaum@postschell.com
David E. Renner
drenner@postschell.com
Four Penn Center
1600 John F. Kennedy Blvd.
Philadelphia, PA 19103
Phone: (215) 587-1000
Facsimile: (215) 587-1444

Glenn Guanowsky
Vice President, Legal Services
Lehigh Valley Health Network
glenn.guanowsky@LVHN.org
234 North 17th Street
Allentown, PA 18104
Phone: (610) 969-2774

*Counsel to Defendants*

## **CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing Motion to Dismiss and accompanying Memorandum of Law in Support was electronically filed with the Court and is available for viewing and downloading from the ECF System and thereby has been served upon the following electronically and by FedEx overnight delivery:

Robert C. Villare, MD<br>
113 Westwood Hill<br>
Woodbury, NJ 08096<br>
rcvillare@gmail.com<br><br>
<em>Plaintiff</em>

**POST & SCHELL, P.C.**

Dated: July 9, 2019      By:    /s/ David E. Renner

        A. James Johnston
        ajohnston@postschell.com
        Andrea M. Kirshenbaum
        akirshenbaum@postschell.com
        David E. Renner
        drenner@postschell.com
        Four Penn Center
        1600 John F. Kennedy Blvd.
        Philadelphia, PA 19103
        Phone:  (215) 587-1000
        Facsimile:  (215) 587-1444

        Glenn Guanowsky
        Vice President, Legal Services
        Lehigh Valley Health Network
        glenn.guanowsky@LVHN.org
        234 North 17th Street
        Allentown, PA 18104
        Phone:  (610) 969-2774

        *Counsel to Defendants*